UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANDREZ GALARZA MIRANDA, ) | |
| ) | |
| Movant, ) | No. 3:09-0184 |
| ) | (Criminal Case No. 3:03-00205-01) |
| v. ) | JUDGE ECHOLS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Andrez Galarza Miranda ("Miranda") filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. (Docket Entry No. 1.) The Government filed a response opposing the motion (Docket Entry No. 4) and Miranda filed a reply (Docket Entry No. 7.)

## I. PROCEDURAL HISTORY

The federal grand jury returned a multi-count Third Superseding Indictment (No. 3:03-00205, Docket Entry No. 572) naming Miranda as the ringleader of an extensive drug distribution conspiracy in middle Tennessee between November 1, 2002 and October 27, 2003, involving five (5) or more kilograms of cocaine. Just prior to the scheduled trial date, Miranda reached a plea agreement with the Government and decided to enter a guilty plea to Count One, charging drug conspiracy in violation of 21 U.S.C. §§ 841 & 846, and to Count Four, charging possession of a firearm in furtherance of a drug trafficking crime, that being possession of cocaine with intent to distribute, in violation of 18 U.S.C. §§ 924(c) & 2. Prior to reaching the plea agreement, Miranda faced a statutory mandatory minimum sentence of ten (10) years to life in prison on Count One and a consecutive five-year sentence on Count Four.

1

At the guilty plea hearing held on February 18, 2005, Miranda informed the Court through counsel that he wished to plead guilty to Counts One and Four. (No. 3:03-00205, Docket Entry No. 884, Plea Tr. at 6.) During the guilty plea colloquy conducted by the Court, Miranda stated that he had discussed his decision to plead guilty with his lawyer. (Id. at 7.) Miranda, a Mexican citizen, was then 33 years of age with a third grade education. (Id. at 7-8.) He told the Court he could speak and read a little English, but he could not write English. He was able to read and write in Spanish. A Spanish-speaking interpreter was present at the hearing to translate the proceedings for Miranda. (Id. at 10-11.)

Miranda informed the Court he received a copy of the Third Superseding Indictment and he discussed it with counsel and knew the elements the Government would have to prove for a jury to find him guilty on all counts. He also indicated that his counsel was familiar with all the facts on which the charges were based, and they had discussed potential trial defenses. Miranda also stated he was satisfied with the advice he had received from counsel to that point, and he had no complaint about counsel's investigation of the case. (Id. at 13, 16-18.) When asked by the Court, "Do . . . you have any complaint about things that your lawyer hasn't done on your behalf that you believe he should have done on your behalf?" Miranda answered, "Everything's fine. My lawyer did the best he could." (Id. at 18.)

The Court related to Miranda that the maximum penalty for the conspiracy offense was a sentence of ten years to life and on the firearm count, a consecutive sentence of five years. (Id. at 19.) Miranda stated to the Court, "I would like to know how much it is going to be all together, the sentence which is going to be imposed on me." (Id.) The Court responded, "Mr. Miranda, I don't

2

know that. At this time I can only give you the maximum penalties." Miranda was satisfied with this answer and did not ask any further questions. (Id. at 20.)

The Court went over good time credit, the lack of parole, supervised release, fines, restitution, the special assessment, and relevant conduct. Miranda had no questions about any of these matters. (Id. at 20-25.) The Court explained the Sentencing Guidelines would be applied, and Miranda stated his lawyer had discussed the Guidelines with him. (Id. at 26-28.) The Court pointed out that Miranda's Petition to Enter Plea of Guilty estimated the guideline sentencing range would be 295 months to 353 months, and Miranda replied that he understood the estimated guideline sentencing range. (Id. at 28.) After the Court explained the nature and content of the presentence investigation report that would be ordered, Miranda agreed that he still wanted to plead guilty. (Id. at 29-31.) The Court then informed Miranda of the jury trial rights he would forfeit by pleading guilty, and he stated he understood the rights he was giving up. (Id. at 31-34.)

Next, the Court reviewed specific provisions of the Petition to Enter Plea of Guilty and the attached plea agreement, and Miranda indicated he understood all of the provisions because he had discussed the documents with his lawyer and they had been read to him by a Spanish-speaking interpreter. (Id. at 34, 36-38.) In the plea agreement, Miranda and the Government agreed that the drug conspiracy involved 50 to 150 kilograms of cocaine, which would result in a base offense level of 36. (Id. at 38.) They also agreed that a four-level enhancement applied because Miranda was a leader or organizer of the conspiracy, and that the Government would recommend a two-level reduction for acceptance of responsibility. (Id. at 39, 42.) They also agreed that Miranda faced a consecutive 60-month sentence on Count Four, the firearm charge. (Id. at 39-40.) Miranda agreed to provide a complete financial statement, and he knowingly waived his right to challenge the

3

voluntariness of his guilty plea. (Id. at 42-43.) He stated he entered into the plea agreement and was pleading guilty because he was in fact guilty of the crimes charged. He admitted that law enforcement officers executed a search warrant at a home on Creekside in Nashville that had been rented for him, and that officers seized seven (7) kilograms of cocaine and a firearm in the same room. Miranda admitted that, during the conspiracy, he distributed at least 50 but not more than 150 kilograms of cocaine. (Id. at 47.)

Miranda confirmed that he had made no other agreements with the Government. (Id. at 49.) He had no questions about the plea agreement, and agreed that it stated every understanding he had with the Government and nothing else had been promised to him. (Id. at 50.) Miranda stated that no one had put pressure on him to plead guilty and his mind was clear. (Id. at 50-52.) Counsel agreed that Miranda was competent to enter a guilty plea. (Id. at 52.)

The Government relied on the facts as stated in the plea agreement and did not present any testimony. Miranda agreed that the facts as stated in his plea agreement were true. (Id. at 52-53.) Again, he stated that he was pleading guilty because he was, in fact, guilty. The Court made specific findings that Miranda's guilty plea was knowingly and voluntarily entered, and the plea documents were then executed by the parties in open court and accepted by the Court. (Id. at 53-55; No. 3:03-00205, Docket Entry No. 623.)

Through counsel, Miranda made three or four minor objections to the presentence investigation report, two of which were withdrawn at the sentencing hearing, but his objections did not affect the guidelines calculation. (No. 3:03-00205, Docket Entry No. 730; Docket Entry No. 886, Sent. Tr. at 67-68.) Miranda agreed to the drug quantity of 50 to 150 kilograms, which resulted in a base offense level of 36. (Sent. Tr. at 70.) The Court also found Miranda to be an organizer

4

or leader and imposed the four-level increase under §3B1.1(a), adjusting the offense level to 40. (Id. at 70-71.) Miranda's primary concern at the sentencing hearing was that the Court should award the extra one point for acceptance of responsibility. The Court granted the two-level reduction for acceptance of responsibility, which dropped the adjusted offense level to 38, but the Court did not award the extra point. (Id. at 72.)

Because Miranda had no criminal history points, he fell within criminal history Category I. With an adjusted offense level of 38, his guideline sentencing range was 235 to 293 months, with a consecutive five-year sentence for the firearm count. (Id. at 72-73.) Miranda's counsel did not object to this guideline range, as it was exactly what Miranda expected pursuant to the plea agreement. Defense counsel argued only that granting the third point for acceptance of responsibility would lower the sentencing range. (Id. at 79-80.) The Government asked the Court to impose a sentence at the top of the guideline range. The Court imposed a sentence of 235 months at the bottom of the guideline range for the conspiracy charge and added an additional 60-month consecutive sentence for the firearm charge, for a total of 295 months, or more than twenty-four years in prison. The Court waived any fine, but imposed five years of supervised release and a special assessment of $200.00. (Id. at 86, 102-103.)

Miranda appealed to the Sixth Circuit arguing, apparently in an Anders brief, only that the Court should not have imposed a condition tolling his supervised release term during deportation. The Sixth Circuit agreed in an August 5, 2008 Order and remanded the case. (No. 3:03-00205, Docket Entry No. 973.) On remand, the Court granted Miranda's motion and removed the tolling condition. (Id. Docket Entry Nos. 974, 976.)

5

Miranda then filed the instant § 2255 motion on February 23, 2009. In ground one, he claims that he received ineffective assistance of counsel and there were cumulative errors throughout the proceedings. He alleges that defense counsel failed to: investigate and present mitigating evidence, prepare for the sentencing phase, challenge the credibility of Miguel Hernandez who gave adverse testimony against Miranda, and challenge the drug quantity, especially the quantities stated by Hernandez. He also faults his counsel for failing to raise the issue of prosecutorial misconduct and failing to demand that the Government produce the chemical analysis of seized drugs. He contends he has a right to have the drugs tested. Miranda also alleges that counsel failed to issue subpoenas, but he did not specify in the motion who counsel should have subpoenaed. In the reply, it appears Miranda contends Hernandez should have been subpoenaed. Miranda further alleges that counsel failed to: object to the increase for leadership role, argue for a downward departure based on his lack of education, argue for application of the safety valve, object to the facts presented, investigate and pursue sentencing alternatives and lines of defense at sentencing, and seek a lesser offense.

In ground two, Miranda contends that he was represented by the same attorney on appeal and therefore, the attorney suffered from a conflict of interest. As a result of the conflict of interest, counsel did not raise arguable issues on appeal, including ineffective assistance of counsel. He also vaguely alleges that appellate counsel delayed notification of appellate procedures.

In ground three, Miranda argues he is actually innocent of the gun charge because he never had physical possession of the weapon and he was not present when the firearm was seized. He states he asked counsel to get fingerprints from the gun to show that he never had physical possession of it. He denies that he used, carried, brandished or otherwise employed the firearm.

6

Finally, in ground four, Miranda contends that the plea agreement was adhesive and advanced by defense counsel, who inadequately and incorrectly advised him to accept a drug quantity of 50 to 150 kilograms of cocaine, when in fact the indictment only charged a quantity of seven (7) kilograms of cocaine.[1] Miranda claims he was in fear and under duress, and he was not advised that he could withdraw his guilty plea. He believes defense counsel and the prosecutor took advantage of his weaker position and he was forced to adhere to the plea agreement with little choice about its terms. He alleges that defense counsel told him he had to sign the plea agreement or go to trial and risk a life sentence.

In support of the response to the § 2255 motion, the Government provides the affidavit of Miranda's counsel, Jerry Gonzalez. (No. 3:09-0184, Docket Entry No. 5.) He has been a licensed attorney since 1996 and devotes thirty to fifty percent of his practice to criminal cases. He was appointed to represent Miranda.

Mr. Gonzalez states he spent many hours with Miranda reviewing discovery materials, including numerous recordings of telephone calls intercepted by law enforcement. At some point Mr. Gonzalez received a plea offer from the Government, which he discussed with Miranda, along with the sentences Miranda faced with the plea agreement or following trial. Mr. Gonzalez made a counter-offer, which the Government did not accept, so he proceeded to prepare for trial.

On the Friday before trial was to begin on the following Tuesday, Mr. Gonzalez met with Miranda to prepare for trial. During the meeting, without any prodding or suggestions by Mr. Gonzalez, Miranda asked if the Government's offer was still open. Mr. Gonzalez contacted the Assistant United States Attorney, who provided another proposed plea agreement. Mr. Gonzalez

---

[1]The indictment actually charged a quantity of five (5) kilograms or more.

met with Miranda to discuss the proposed plea agreement. Mr. Gonzalez utilized a Spanish-speaking interpreter to assist him in reviewing the plea agreement with Miranda. The plea agreement was the one discussed earlier in this opinion and accepted by the Court at Miranda's guilty plea hearing. After the interpreter left the room, Mr. Gonzalez reviewed with Miranda his trial rights, the Government's anticipated proof, any possible defenses, what might be expected at sentencing, and the effective assistance of counsel standard. Mr. Gonzalez gave Miranda an estimate of what the guideline sentencing range would be. Miranda appeared to understand the proposed plea agreement and raised no objections about the agreement to Mr. Gonzalez or later to the Court during the guilty plea hearing.

Upon receiving a copy of the presentence investigation report, Mr. Gonzalez sent a copy to Miranda and later reviewed it with him. He filed objections on all of the issues Miranda asked him to raise, even though he thought some of them may have been frivolous. The sentence actually imposed by the Court was consistent with the estimate Mr. Gonzalez earlier provided to Miranda.

Miranda did not request that Mr. Gonzalez argue application of the safety valve. Even if he had, Mr. Gonzalez, in his professional opinion, did not think Miranda qualified for the safety valve because he had agreed to plead guilty to possession of a firearm in furtherance of drug trafficking, he had agreed to a leadership role enhancement, and he failed to provide truthfully all of the information and evidence he had concerning the offenses. Additionally, the safety valve would not have benefitted Miranda because his guideline sentencing range based on the amount of drugs agreed to in the plea agreement was higher than the statutory minimum.

8

During their meetings, Miranda did not dispute that the seven kilograms seized by law enforcement contained cocaine. He did not provide any information to suggest that Mr. Gonzalez should have an independent chemical analysis done on the kilograms that were seized.

Miranda did not provide any plausible defenses. He did not disagree that the conspiracy involved 50 to 150 kilograms. Miranda's only argument was that the total amount was not 200 kilograms, but more like 100 to 150 kilograms. Miranda's only real dispute as to the weapon found in the house at the time the seven kilograms of cocaine were seized was that the Government was wrong about the caliber of the pistol. Mr. Gonzalez did not have the gun fingerprinted because there was no need to do so. The Government had no evidence that Miranda's prints were on the gun.

Although Miranda claimed Mr. Gonzalez was ineffective for not attacking Miguel Hernandez's testimony, Mr. Hernandez did not testify at the sentencing hearing. Miranda agreed in the plea agreement to the amount of cocaine to be used for sentencing purposes.

Mr. Gonzalez also avers that he did not make a motion for a downward departure based on Miranda's level of education because Miranda never raised that issue with him. Such a motion would have been contrary to the plea agreement, and Mr. Gonzalez was not aware of any basis for a downward departure in the case.

Even though Miranda received a sentence that was exactly as anticipated in his plea agreement, Miranda immediately asked Mr. Gonzalez to file an appeal and he did. The only viable issue Mr. Gonzalez could raise was the tolling of supervised release while Miranda is out of the country following deportation. Upon raising the issue, the Government agreed to a remand so that the requirement could be removed. Despite repeated requests by Mr. Gonzalez, Miranda did not

9

suggest any other ground for appeal nor did he make any attempt to file his own appellate brief as he was repeatedly encouraged to do.

Mr. Gonzalez believes he did everything he could to represent Miranda. He was prepared to go to trial, but Miranda on his own, without any pressure from Mr. Gonzalez, decided to accept the Government's plea offer. Miranda voluntarily entered into the agreement which required him to agree to the amount of drugs, a leadership role enhancement, and possession of the weapon.

## II. STANDARDS OF REVIEW

To prevail on a § 2255 motion, Miranda must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993).

To establish ineffective assistance of counsel, Miranda must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Miranda must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Id. A court

10

Case 3:09-cv-00184   Document 8   Filed 07/07/09   Page 10 of 16 PageID #: 54

need not address both parts of the Strickland test if the movant makes an insufficient showing on one. Strickland, 466 U.S. at 697.

The Strickland standard for evaluating claims of ineffective assistance of counsel at trial applies to guilty plea hearings as well. Hill v. Lockhart, 474 U.S. 52, 58 (1985). Miranda "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See id. at 59. The Supreme Court has cautioned, however, that "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Miranda is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the district judge also hears the collateral proceedings, as is the case here, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

The Court concludes that an evidentiary hearing is not warranted because the Court's review of the entire record of the proceedings, including the transcripts of Miranda's guilty plea and sentencing hearings, shows conclusively that Miranda is not entitled to relief. See Green, 65 F.3d

11

at 548.  The affidavit of Mr. Gonzalez satisfies the Court that Miranda did not receive deficient representation of counsel or that such deficient representation prejudiced Miranda.  See Strickland, 466 U.S. at 687.  To the extent Miranda's statements in his § 2255 motion executed under the penalty of perjury conflict with Mr. Gonzalez's affidavit, the record before the Court belies the self-serving contentions Miranda makes in his § 2255 motion in an effort to set aside his convictions and sentences.

Mr. Gonzalez provided effective representation to Miranda throughout the criminal case.  He investigated the case and discussed voluminous discovery, including recordings of intercepted telephone calls, with Miranda.  When first presented with a plea offer, he discussed the offer with Miranda and made a counter-offer.  When that was not accepted, he prepared for trial and met with Miranda for that purpose.  During trial preparation just days before trial was set to begin, Miranda, without prompting, asked if the plea offer was still open.  Mr. Gonzalez contacted the Government and received a second plea offer, which he discussed with Miranda with the assistance of a Spanish-speaking interpreter.  Miranda agreed to admit that the drug conspiracy involved 50 to 150 kilograms of cocaine, that he was an organizer or leader of the conspiracy, and that he possessed a firearm in furtherance of a drug trafficking crime.  As a result of his guilty plea, Miranda faced a sharply reduced prison sentence, from life in prison to a maximum of 353 months.

At the guilty plea hearing, with a Spanish-speaking interpreter assisting, Miranda told the Court he was not under the influence of any substances that would affect his competency to understand and respond to the Court's questions.  He assured the Court that he received a copy of the Third Superseding Indictment, he had no questions about the charges against him, he discussed the charges and possible defenses with his counsel, and he had no questions about what the

12

Government would have to prove. He also informed the Court that he was satisfied with the investigation and advice of his counsel and he had no complaints about Mr. Gonzalez because "[m]y lawyer did the best he could." (Plea Tr. at 18.)

The Court advised Miranda of the mandatory minimum and maximum statutory penalties he faced. He stated he understood the possible penalties, including potential fines, and he had no questions for the Court about the penalties. The Court advised Miranda of the trial rights he would give up by pleading guilty, the impact of pleading guilty to a felony offense, the application of the Sentencing Guidelines, and the requirements of supervised release. Miranda confirmed that Mr. Gonzalez had discussed his rights and the Guidelines with him, and he understood any sentencing estimate was not a promise or guarantee. Knowing all of the potential penalties, Miranda told the Court he wanted to plead guilty. He admitted the facts supporting the plea and he specifically conceded that the conspiracy involved 50 to 150 kilograms of cocaine, that he was an organizer or leader, and that he possessed a firearm in furtherance of a drug trafficking crime. Based on these admissions, there was not a factual basis for conviction on any lesser offenses. Miranda asked the Court only one question and that was about the sentence he would receive. He stated repeatedly that he was pleading guilty because he was, in fact, guilty. In light of the lengthy Rule 11 plea colloquy and Miranda's responses to the Court's questions, the Court can only conclude that Miranda entered his guilty plea to Counts One and Four knowingly, voluntarily, and intelligently. The evidence does not support Miranda's claim that he was under duress or pressure by his counsel or the Government, that his counsel and the Government took advantage of him, or that he did not understand what he was doing when he signed the plea agreement and entered his guilty plea.

Mr. Gonzalez prepared adequately for sentencing. He met with Miranda and discussed the presentence investigation report. He made the objections Miranda requested, even though they may have been frivolous. Miranda has not shown what mitigating evidence Mr. Gonzalez should have brought to the Court's attention that the Court did not know after reading the presentence investigation report.

At the sentencing hearing, Miguel Hernandez did not testify. Therefore, Miranda's claim that Mr. Gonzalez should have challenged Hernandez's testimony is baseless. Even if Miranda contends that Hernandez provided the Government during a proffer with a calculation of the drug quantity involved in the conspiracy and was wrong about the quantity, Miranda himself admitted under oath before the Court that the conspiracy involved up to 150 kilograms of cocaine. In speaking with his counsel in preparation for sentencing, Miranda made clear to Mr. Gonzalez that he only wanted to challenge any suggestion that the conspiracy involved 200 kilograms of cocaine. At sentencing, Mr. Gonzalez requested a third point for acceptance of responsibility and argued for a sentence at the bottom of the guideline range while the Government argued for a sentence at the top of the range. The guideline range in the presentence investigation report, which was adopted by the Court, was precisely the range Miranda expected when he entered his guilty plea. There was no basis to support motions for a downward departure or to apply the safety valve, and Mr. Gonzalez was not ineffective for failing to make such motions.

While Mr. Gonzalez did not address in his affidavit Miranda's allegation about raising the issue of prosecutorial misconduct, the Court observes that the § 2255 motion is extremely general in this regard and simply refers to "prosecutorial misconduct." Miranda does not explain what type

14

of misconduct occurred or what Mr. Gonzalez should have done about it. This conclusory claim is rejected.

There is also no basis for Miranda's claim of ineffective assistance of counsel on appeal. Mr. Gonzalez filed an appeal as Miranda directed and he raised the only viable issue he could identify after a thorough guilty plea hearing and sentencing. The appeal resulted in a remand and this Court's removal of the tolling provision concerning supervised release. Miranda was not precluded from raising ineffective assistance of counsel because he was able to file this § 2255 motion raising the issue. Ineffective assistance is not ordinarily raised on direct appeal in any event.

Finally, Miranda now claims that he did not physically possess, use, carry, brandish or otherwise employ the firearm seized at the Creekside address and thus, he is factually innocent of the § 924(c) charge. This claim is foreclosed by his voluntary and knowing guilty plea in which he admitted that he possessed the firearm in furtherance of a drug trafficking crime. Using, carrying, brandishing, or employing the firearm is not necessary to violate § 924(c) where Miranda was charged with the separate offense of possession in furtherance of a drug trafficking crime. See United States v. Combs, 369 F.3d 925, 932 (6th Cir. 2004). The Government presented a sufficient factual basis in support of the guilty plea to show that Miranda possessed the weapon for purposes of a § 924(c) conviction, and Miranda is not factually innocent of the charge. In addition, this claim is barred by the waiver contained in Miranda's plea agreement and by the guilty plea itself. See United States v. Pickett, 941 F.2d 411, 416-417 (6th Cir. 1991) (holding guilty plea waives non-jurisdictional issues).

15

Case 3:09-cv-00184  Document 8  Filed 07/07/09  Page 15 of 16 PageID #: 59

## IV. CONCLUSION

For all of the reasons stated, Andrez Miranda's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence will be denied. Because the record shows conclusively that Miranda is not entitled to relief, an evidentiary hearing is not warranted on any issue. See Green, 65 F.3d at 548.

An appropriate will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE